NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRISTIAN NAPOLITANO, et al.,** | **Civil Action No. 10-1712 (FLW)** |
| **Plaintiffs,** | |
| **v.** | **MEMORANDUM OPINION** |
| **HAVEN HOMES INC., et al.,** | |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is Defendant Haven Homes Inc.'s ("Haven") motion for leave to file a Third Party Complaint and Counterclaims against South Beach SSP, LLC ("SB SSP"), Eugene Rosenthal ("Rosenthal") and Plaintiffs.  Specifically, Haven seeks to file third party claims against SB SSP and Rosenthal as well as a counterclaim against South Beach, LLC ("SB LLC") and Christian Napolitano, for contribution and indemnification based on their alleged negligence in failing to properly insulate the area in which the sprinkler pipe froze and burst.[1]  Haven also seeks permission to add third party claims against SB SSP and Rosenthal as well as a counterclaim against the existing Plaintiffs, Christian Napolitano, Bonnie Napolitano and SB LLC (collectively "Plaintiffs") for unjust enrichment. [Docket Entry No. 26].  Plaintiffs

---

[1]The Court notes that in its moving brief, Haven states that "the interest of justice requires that Haven be allowed to amend their pleadings to assert . . . a counterclaim against S[B LLC]" for contribution and indemnification.  (Haven Br. at 3; Docket Entry No. 26-3).  No mention is made of a counterclaim against Christian Napolitano for contribution and indemnification.  Nevertheless, Haven' proposed Third Party Complaint and Counterclaim clearly indicates that Haven also intends to assert a counterclaim for contribution and indemnification against Christian Napolitano.  The Court, therefore, examines the propriety of same in determining the pending motions.

oppose Haven's motion.  Plaintiffs also subsequently filed a motion to amend their Complaint in which they seek to (1) correct the name of the Limited Liability Company from SB LLC to SB SSP; (2) name Haven Group, Inc. ("Haven Group") as a defendant in light of the fact that Haven Group has answered for Haven in this matter; (3) delete PFS Corp. as a defendant as it has been terminated from this case; and (4) add the legal theory of *res ipsa loquitur* to Plaintiffs' previously asserted negligence claim. [Docket Entry No. 30].  While Haven does not take issue with Plaintiffs' first three proposed amendments, Haven does oppose Plaintiffs' request to add the legal theory of *res ipsa loquitur* to their Complaint.[2]  The Court has fully reviewed all arguments made in support of and in opposition to the pending motions.  The Court considers the motions without oral argument pursuant to FED.R.CIV.P. 78.  For the reasons set forth more fully below, Haven's motion to file a Third Party Complaint and counterclaims is GRANTED in part and DENIED in part and Plaintiffs' motion to amend their Complaint is GRANTED.

## I.    Background

The parties and the Court are all familiar with the facts underlying this litigation. As such, they are not restated at length herein. Haven provides builders with modules for construction of residential homes; the modules must then be completed by the builder, which includes "marrying" the units by installing additional insulation and drywall. In this case, SB SSP contracted with Haven to construct pre-fabricated housing units in Seaside Park, New Jersey. This matter arises out of a sprinkler pipe which burst and caused damage in the condominium unit owned by Bonnie Napolitano, pre-fabricated by Haven and developed and built by SB SSP.

---

[2]In light of the fact that there is no opposition to Plaintiffs' first three proposed amendments, Plaintiffs motion to make those amendments is granted.

SB SSP contends that the exclusive cause of the burst pipe is Haven's negligence in the improper installation of certain insulation, which allegedly prevented the heat from reaching the pipe and caused the pipe to burst. Haven, however, contends that the location of the pipe was in an "unfinished segment" of the prefabricated unit and that the developer, SB SSP, or alternatively, SB SSP's subcontractors, were responsible for the improper installation of insulation and therefore the subsequent burst pipe and resulting damage.

### A.    Haven's Proposed Third Party Complaint and Counterclaims

Via its motion to file a Third Party Complaint and counterclaims, Haven seeks to assert claims against SB SSP, Rosenthal, SB LLC and Christian Napolitano for contribution and indemnification as well as claims against SB SSP, Rosenthal and all Plaintiffs for unjust enrichment.  Essentially, the basis for Haven's contribution and indemnification claims stem from Haven's allegation that the damage that resulted from the burst sprinkler pipe was caused by SB SSP, Rosenthal, SB LLC and/or Christian Napolitano's negligence in failing to properly install insulation in an "unfinished segment" of a prefabricated module provided by Haven for use in constructing the condominium unit owned by Bonnie Napolitano.  The basis for Haven's unjust enrichment claim arises from the fact that after being informed of the leak and damage to Bonnie Napolitano's unit, Haven "removed much of the wet sheetrock" from the unit and "threw out plaintiff's wet sheetrock, flooring, personal property and any furniture that could not be salvage" and stored "[a]ny personal property that could be saved[,]" all without payment from Plaintiffs.  (Haven Br. at 3; Docket Entry No. 26-3).

3

Haven asserts that the liberal standards set forth in FED.R.CIV.P. ("Rule") 15 require that it be permitted to file the requested Third Party Complaint and counterclaims.  Specifically, Haven argues that neither its proposed Third Party Complaint nor its proposed counterclaims are frivolous or legally insufficient on their face.  Haven claims that its proposed contribution and indemnification claims against SB SSP, Rosenthal, SB LLC and Christian Napolitano are supported by Christian Napolitano's deposition testimony which confirms that (1) he, SB SSP, and/or SB LLC acted as the developer and builder of the unit damaged by the burst pipe; (2) the builder was responsible for ensuring that the walls were properly insulated before being closed; and (3) he hired Rosenthal to apply insulation in the damaged unit.  Based largely on these facts, Haven argues that its proposed contribution and indemnification claims are not futile and that the interests of justice require that it be permitted to assert same.

Haven similarly argues that its proposed unjust enrichment claim is not futile because Plaintiffs unfairly benefitted from the "labor performed by Haven in cleaning up the residence and storing their property after the leak[,]" a benefit for which it is undisputed that Plaintiffs never paid.  (Haven Br. at 4).  Haven contends that these facts are sufficient to support their claim for unjust enrichment.

Further, Haven argues that Plaintiffs will not be prejudiced by the addition of its proposed contribution, indemnification and unjust enrichment claims.  In this regard, Haven notes that discovery is still ongoing.  Indeed, Haven notes that "[t]he depositions of the representatives of the defendants and their former employees have yet to be taken."  (Haven Reply Br. at 4; Docket Entry No. 31).  Haven also claims that it made diligent efforts to identify other contractors involved in the project at issue in this matter, efforts that initially met with no response from

Plaintiffs.  (Haven Br. at 5; Haven Reply Br. at 4).  As a result, Haven claims that it should be permitted to file the requested Third Party Complaint and counterclaims.

Plaintiffs oppose all of Haven's proposed amendments.  With respect to Haven's proposed contribution and indemnification claims, Plaintiffs argue that Haven has no specific evidence showing that SB SSP or Rosenthal were responsible for insulating the sprinkler pipe that burst.  Indeed, Plaintiffs contend that Haven's proposed claims lack the factual basis necessary to be granted.  Plaintiffs also argue that Haven's motion in this regard should be denied based on undue delay.  Specifically, Plaintiffs contend that "Haven is seeking to unduly delay this matter by delaying the inevitable finding that Defendant Haven is responsible for Plaintiffs' damages due to Defendants' negligence."  (Pl. Br. in Support of Pl. MTA and in Opp. to Haven's Motion at 3; Docket Entry No. 30).[3]

Further, with respect to Haven's proposed unjust enrichment counterclaim, Plaintiffs argue that this proposed amendment should be denied as futile because Haven voluntarily undertook the clean up of the water damaged unit and the storage of Plaintiffs' personal property without ever requesting that Plaintiffs sign a contract for the worked performed.  In light of the fact that Haven never provided Plaintiffs with a detailed contract, specifying the cost of the work to be performed among other things, Plaintiffs argue that Haven failed to comply with the New

---

[3]Plaintiffs also request that the Court strike from consideration as hearsay certain uncertified interrogatory answers as well as a letter from its in-house counsel that Haven cites to in support of its motion to file a Third Party Complaint and counterclaims.  While the Court does not necessarily believe that this information needs to be stricken, the Court finds that it is not necessary for the Court's determination of Haven's motion.  As a result, the Court has not relied on the aforementioned information in deciding same.

Jersey Consumer Fraud Act (the "CFA"), N.J.S.A. 56:8-1.  As a result Plaintiffs claim that

Haven's proposed amendment is futile and should be denied.

Plaintiffs additionally argue that Haven's proposed unjust enrichment claim is futile

because, in addition to violating the CFA, Haven also violated New Jersey's Home Improvement

Contractor's Registration Act (the "Contractor's Registration Act"), N.J.S.A. 56:8-136, *et seq*.,

which amounts to a *per se* CFA violation.  Haven does not specifically respond to these

arguments, but maintains that it is entitled to compensation as Plaintiffs were unjustly enriched

by the work it performed and storage it secured for Plaintiffs' belongings, neither of which

Plaintiffs paid for.

**B.     Plaintiffs' Proposed Amended Complaint**

Through their motion to amend, Plaintiffs seek permission to assert the legal theory of *res

ipsa loquitur* in conjunction with their negligence claim against Haven.[4]  Plaintiffs argue that

they should be permitted to amend their claim to assert the legal theory of *res ipsa loquitur* under

Rule 15(a)'s liberal amendment standard.  Specifically, Plaintiffs contend that their proposed *res

ipsa loquitur* amendment is appropriate because the available certifications and deposition

testimony show that Haven was not only negligent but that the "sprinkler system and insulation

was [sic] in Defendants' exclusive control."  ( Pl. Br. in Support of Pl. MTA and in Opp. to

Haven's Motion at 2).  In addition, Plaintiffs argue that Haven will not be prejudiced by their

---

[4]As the Court previously noted, Plaintiffs through their motion to amend also seek to
make three other technical amendments.  Haven does not oppose these technical amendments.
Therefore, the Court has granted same and shall not discuss them further herein.

proposed amendment because they "simply wish to add and develop th[e] theory" of *res ipsa loquitur*, a theory that would be used "as part of their previously pleaded negligence case." (Pl. Reply at 1-2; Docket Entry No. 32).

Haven opposes Plaintiffs' motion arguing that Plaintiffs have failed to establish that they are entitled to rely on the theory of *res ipsa loquitur*.  In this regard, Haven argues that the theory of *res ipsa loquitur* only applies where "'the instrumentality causing the injury was in the exclusive control of the defendant, and . . . the circumstances surrounding the happening were of such a nature that in the ordinary course of events the incident would not have occurred if the person (entity) having control of the instrumentality had used reasonable care under the circumstances.'"  (Haven Reply Br. at 4-5 (quoting New Jersey Model Jury Charge 5.10D). Haven claims that Plaintiffs cannot meet the above-referenced standard both because the bursting of a sprinkler pipe does not necessarily bespeak negligence and because Plaintiffs were in the sole possession of their residence, had exclusive control of the heat in the residence and, as such, Haven did not have exclusive control of the area involving the burst sprinkler pipe.  With respect to the former point, Haven contends that Plaintiffs want the jury to assume that insulation would have prevented the sprinkler pipe at issue from cracking and freezing, but that is not necessarily the case because even insulated pipes freeze and crack.  Haven claims that this fact is "certainly not a fact with in [sic] the ken of the average juror" and instead will require expert testimony. (*Id*. at 5).  Consequently, Haven claims that Plaintiffs cannot establish that the theory of *res ipsa loquitur* is applicable to their negligence claims.

In response, Plaintiffs note that while they indeed were in exclusive control of their unit, the sprinkler pipe that burst was located above their unit, an area they contend that Haven

maintained exclusive control over.  In addition, Plaintiffs argue that the circumstances surrounding the burst pipe bespeak negligence.  Furthermore, Plaintiffs again argue that their proposed amendment will not prejudice Haven and, as such, they should be permitted to add the theory of *res ipsa loquitur* to their Complaint.

## II.    Analysis

### A.    Standard of Review

Motions to amend the pleadings are governed by Rule15(a).  Motions to file Third Party Complaints under Rule 14 are essentially motions to amend the pleadings and consequently are also judged by the same standards.  *Ryan v. Collucio*, 183 F.R.D. 420, 423 (D.N.J. 1998). Pursuant to Rule 15(a)(2), leave to amend the pleadings is generally given freely.  *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*.  However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted.  *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment."  *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).  To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant

8

additional resources to conduct discovery and prepare for trial, (2) significantly delay the

resolution of the dispute, or (3) prevent a party from bringing a timely action in another

jurisdiction.  *See Long*, 393 F.3d at 400.  Delay alone, however, does not justify denying a

motion to amend.  *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir.

2001).  Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the

court, or . . .  'prejudicial,' placing an unfair burden on the opposing party" that denial of a

motion to amend is appropriate.  *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984).

Further, a proposed amendment is appropriately denied where it is futile.  An amendment

is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face."

*Harrison Beverage Co. v. Dribeck Imps., Inc.,*, 133 F.R.D. 463, 468 (D.N.J. 1990) (Internal

quotation marks and citations omitted).  In determining whether an amendment is "insufficient

on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard.  *See Alvin*, 227

F.3d at 121.  Under Rule 12(b)(6), a motion to dismiss will be granted if the plaintiff fails to

articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  Thus, "[w]hile a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, . . .  a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Id*. at 1964-65 (citations omitted).  Instead, "[f]actual allegations must be

enough to raise a right to relief above the speculative level . . . on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965 (citations omitted).

In this regard, the Court notes that in determining whether a claim should be dismissed under

Rule 12(b)(6), the factual allegations set forth in the pleading must be accepted as true and viewed in the light most favorable to the party asserting them.  *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004).

### B.      Discussion

#### 1.      Haven's Motion to File a Third Party Complaint and Counterclaims

##### a.      Negligence-Based Claims for Contribution and Indemnification Against SB SSP, Rosenthal, SB LLC and Christian Napalitano

The Court finds that Haven should be permitted to add negligence-based contribution and indemnification claims against SB SSP, Rosenthal, SB LLC and Christian Napalitano under the liberal standards set forth in Rule 15(a) and its progeny of case law.

With respect to Haven's proposed contribution claim, the Court notes that a "right of contribution exists among joint tortfeasors."  N.J.S.A. 2A:53A-2.  Indeed, under the Joint Tortfeasors Contribution Law (the "JTCL")"[w]here injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering the injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in a separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share[.]" N.J.S.A. 2A:53A-3.  For purposes of the JTCL, the term "joint tortfeasors" is defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."  N.J.S.A. 2A:53A-1.  The Comparative Negligence Act modified the JTCL such that now "[j]oint

10

tortfeasors no longer share liability on a *pro rata* basis, but instead on the basis of percentages of fault assigned by the trier of fact." *Blazovic v. Andrich*, 124 N.J. 90, 105 (1991) (citing N.J.S.A. 2A:15-5.3). Thus, in order to succeed on a contribution claim under the JTCL and Comparative Negligence Act, a party needs to establish that one or more other persons was a joint tortfeasor.

Here, the Court finds that Haven has asserted sufficient facts which, if taken as true, establish that SB SSP, Rosenthal, SB LLC and Christian Napalitano were joint tortfeasors based on their negligence in failing to properly install insulation in the area around the sprinkler pipe that froze and burst. Specifically, Haven alleges the following facts (1) it contracted with SB LLC or SB SSP to "fabricate, transport, erect and construct on the foundation prefabricated housing units in Seaside Park, New Jersey"; (2) Plaintiffs claim that "a sprinkler pipe froze and burst causing damage" to the condominium unit owned by Bonnie Napolitano; (3) "Christopher [sic] Napolitano, his company [SB LLC] or [SB SSP], or his subcontractor Eugene Rosenthal was responsible for placing insulation in the area where the pipe froze"; and (4) as such, Christian Napolitano, SB LLC, SB SSP or Rosenthal were responsible for the pipe freezing and bursting. (*See* Haven's Proposed Third Party Complaint and Counterclaim at First Count ¶¶ 3-7). While the above-referenced allegations are not enormously detailed, the Court finds that they establish a plausible claim that Christian Napolitano, SB LLC, SB SSP and/or Rosenthal were joint tortfeasors with Haven. Indeed, the Court finds that the above-referenced facts support a finding that Christian Napolitano, SB LLC, SB SSP and/or Rosenthal owed a duty of care to Plaintiffs (and more specifically to Bonnie Napolitano), that one or more of these individuals breached that duty by failing to properly insulate the area in which the sprinkler pipe froze and that this failure at a minimum contributed to and potentially caused the sprinkler pipe to freeze

11

and burst.  *See Endre v. Arnold*, 300 N.J. Super. 136, 142 (App. Div. 1997), *certif*. denied, 150

N.J. 27 (1997) (noting that "[t]hree elements are essential for the existence of a cause of action in

negligence: (1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by

defendant; and (3) an injury to plaintiff proximately caused by defendant's breach.")

Further, the Court is not persuaded by Plaintiffs' argument that Haven's proposed

contribution counterclaim is futile because Haven has no specific evidence showing that SB SSP

or Rosenthal were responsible for insulating the sprinkler pipe that burst.  In fact, the Court finds

that this argument misses the mark because Haven need not come forward with specific evidence

supporting its claims in order to make its proposed amendments.  Instead, the sufficiency of

Haven's proposed contribution claim is judged under Rule 12(b)(6)'s motion to dismiss standard.

Under Rule 12(b)(6), the Court must accept as true the facts alleged in Haven's proposed

pleading and view those facts in the light most favorable to Haven. *Lum v. Bank of Am.*, 361

F.3d 217, 223 (3d Cir. 2004).  Further, unlike on motion for summary judgment under Rule 56,

the Court is not permitted under Rule 12(b)(6) to examine anything beyond the proposed

pleading, exhibits attached to the pleading, matters of public record and undisputedly authentic

documents if the party's claims are based upon same (*see Pension Benefit Guar. Corp. v. White

Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  As explained above, when the Court

examines Haven's proposed pleading in the light most favorable to Haven, It finds that Haven

has asserted sufficient facts to raise a claim that Christian Napolitano, SB LLC, SB SSP and/or

Rosenthal were joint tortfeasors with Haven above the speculative level.

Moreover, even if the Court were to require some evidence that one or more of the

aforementioned persons was in fact responsible for insulating the area around the burst sprinkler

pipe, the Court finds that the deposition testimony of Christian Napolitano cited by Haven provides evidence to support this contention.  As a result, the Court finds that Haven's proposed contribution claim is not futile.

For much the same reasons, the Court finds that Haven's proposed indemnification claim asserted in the Second Count of its proposed Third Party Complaint and Counterclaim is not futile.  In this regard, the Court notes that in New Jersey, a claim for common law indemnification permits a person who has become liable for the wrongful conduct of another to seek reimbursement from the wrongdoer under certain circumstances.  *See Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548, 566 (1980).  First, the party seeking indemnification must be without fault and able to show that its liability is constructive, secondary, vicarious, technical or imputed.  *Id.*; *see also Alder's Quality Bakery, Inc. v. Gaseteria, Inc.*, 32 N.J. 55, 80 (1960).  Second, there must be a special relationship between the party seeking indemnification and the alleged wrongdoer to support the imposition of indemnification; for example, "the liability must arise from either (1) an explicit contractual provision, (2) some special legal relationship; (3) some positive rule of law, or (4) the wrongdoer's failure to discover or correct a defect or remedy a dangerous situation."  *Smith v. Lindemann*, Civil Action No. 10-3319 (FSH), 2011 WL 3235682 (D.N.J. July 28, 2011).

Here, Haven denies that it is liable to Plaintiffs for the damage caused by the burst pipe. Instead, it claims that any conduct on its part was "passive, technical and secondary in nature, while that of the third party defendants, Christopher [sic] Napolitano, S[B LLC], S[B SSP], or Eugene Rosenthal, was active, primary and consummate in nature[.]" (Haven's Proposed Third Party Complaint and Counterclaim at Second Count ¶ 2).  Based on these facts along with its

13

allegations supporting the contention that SB SSP, SB LLC, Rosenthal and/or Christian Napolitano were responsible for the dangerous condition in Plaintiffs' unit, *i.e.*, the burst sprinkler pipe (*Id*. at First Count ¶¶ 3-6), Haven claims that it is entitled to common law indemnification from SB SSP, Rosenthal, SB LLC and Christian Napolitano.

The Court finds that Haven's allegations set forth enough facts to raise its right to relief based on common law indemnification above the speculative level.  As indicated above, the Court finds that Haven has pled sufficient facts to support its claim that SB SSP, Rosenthal, SB LLC and/or Christian Napolitano's negligence in failing to insulate the area around the sprinkler pipe caused the pipe to freeze and burst.  When these facts are taken in conjunction with Haven's unequivocal denial of liability to Plaintiffs for the damage caused by the burst pipe, they are enough to state a claim for common law indemnification.  As a result, the Court finds that Haven's motion to add a claim for common law indemnification against SB SSP, Rosenthal, SB LLC and Christian Napolitano is not futile.

The Court, however, is not persuaded that Haven's claim for contractual indemnification would survive a Rule 12(b)(6) motion to dismiss.  In this regard, the Court notes that in support of its claim for contractual indemnification, beyond asserting that the services rendered by SB SSP, Rosenthal, SB LLC and Christian Napolitano were "provided pursuant to an agreement between Haven and Christopher [sic] Napolitano, S[B LLC], or S[B SSP]" (*Id*. at Third Count ¶ 2), Haven merely alleges that "Christopher [sic] Napolitano, S[B LLC], or S[B SSP] **may** have agreed to indemnify and hold harmless . . . Haven . . . from any claims arising out of the construction project."  (*Id*. at Third Count ¶ 3 (Emphasis added)).  An allegation that Christian Napolitano, SB LLC, or SB SSP may have agreed to indemnify Haven simply does not raise

14

Haven's right to relief above the speculative level and the Court finds that Haven's proposed contractual indemnification claims is not plausible on its face.  As a result, the Court finds that this amendment is futile and denies Haven's motion to the extent Haven seeks permission to make same.

Having determined that Haven's proposed contribution and common law indemnification claims are not futile, the Court next examines whether there are any other bases on which Haven's motion seeking permission to add same should be denied.  The Court finds none.  While Plaintiffs argue that Haven should be denied permission to assert claims for contribution and common law indemnification based on undue delay, the Court finds no reason to credit such an argument.  Indeed, Plaintiffs' conclusory statement that "Haven is seeking to unduly delay this matter by delaying the inevitable finding that Defendant Haven is responsible for Plaintiffs' damages due to Defendants' negligence" provides little, if any, support for the proposition that Haven's motion should be denied.  (Pl. Br. in Support of Pl. MTA and in Opp. to Haven's Motion at 3).  Moreover, as explained above, the Court has already determined that these proposed amendments are not futile.

Contrary to Plaintiffs' arguments, the Court finds that Haven has not unduly delayed in seeking to assert contribution and common law indemnification claims against SB SSP, Rosenthal, SB LLC and Christian Napolitano.  Further, the Court finds that Plaintiffs will not be prejudiced if Haven is permitted to assert same.  In this regard, the Court notes that discovery in this matter is ongoing and the addition of these claims will not substantially delay these proceedings nor will it significantly increase Plaintiffs' cost of litigating this matter.  As a result,

the Court shall permit Haven to add claims for contribution and common law indemnification against SB SSP, Rosenthal, SB LLC and Christian Napolitano.

### b. Claims Against Plaintiffs and SB SSP, Rosenthal and SB LLC for Unjust Enrichment

The Court finds that Haven's proposed unjust enrichment claims against Plaintiffs, SB SSP and Rosenthal would be futile.

Unjust enrichment is a quasi-contractual basis for imposing liability. "To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). Further, liability will only be imposed under the theory of unjust enrichment where the "plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 109 (App. Div. 1966). Here, Haven pleads the following facts in support of its claim for unjust enrichment:

> 2. Haven expended a great deal of time and labor and incurred costs in cleaning up and storing the property for the plaintiffs that was caused by the negligence of Christopher [sic] Napolitano, S[B LLC], S[B SSP], or Eugene Rosenthal.

> 3. Plaintiffs did not pay or otherwise reimburse Haven for the services performed by Haven or for the cost of storing their personal items.

> 4. The plaintiffs were unjustly enriched by the labor performed by Haven in cleaning up the residence and storing their property after the leak.

> 5. Haven is entitled to reimbursement of their costs and the value of their services under a theory of *quantum meruit*.

16

(Haven's Proposed Third Party Complaint and Counterclaim at Fourth Count ¶¶ 2-5; Counterclaim ¶¶ 2-5).[5]

Putting aside the question of whether the sparse facts delineated above adequately state a claim for unjust enrichment, the Court finds that Haven's proposed claim is futile because Haven has failed to allege sufficient facts to permit the Court to reasonably infer that its unjust enrichment claim would not be barred by the CFA.  In this regard, the Court notes that where there has been a violation of the CFA, the CFA bars recovery for the services rendered regardless of the cause of action asserted, even where recovery is sought under the theory of unjust enrichment/*quantum meruit*.  *Mitigation Services, Inc. v. McErlean*, 2009 WL 1361565, *8 (N.J. Super. App. Div. May 18, 2009).  The Court further notes that any violation of the Contractor's Registration Act is a *per se* violation of the CFA.  N.J.S.A. 56:8-146(a); *see Murnane v. Finch Landscaping, LLC*, 420 N.J. Super. 331, 337 (App. Div. 2011).

Pursuant to the Contractor's Registration Act, "every home improvement contract for a purchase price in excess of $500, and all changes in the terms and conditions of the contract" must be "in writing" . . . "signed by all parties thereto," and must "clearly and accurately set forth in legible form and in understandable language all terms and conditions of the contract, including but not limited to . . . (3) The total price or other consideration to be paid by the owner, including the finance charges."  N.J.S.A. 56:8-151(a).  Under the Contractor's Registration Act, a

---

[5]The Fourth Count of Haven's proposed Third Party Complaint and Haven's proposed counterclaim are nearly identical in all respects.  However in ¶ 2 of the proposed counterclaim, the allegation ends after the word "plaintiffs."  The clause "that was caused by the negligence of Christopher [sic] Napolitano, S[B LLC], S[B SSP], or Eugene Rosenthal[,]" is omitted from same.

"contractor" is defined as any "person engaged in the business of making or selling home improvements and includes a corporation, partnership, association and any other form of business organization or entity, and its officers, representatives, agents and employees."  N.J.S.A. 56:8-137.  Further, "home improvement" is defined as "the remodeling, altering, renovating, repairing, restoring, modernizing, moving, demolishing, or otherwise improving or modifying of the whole or any part of any residential or non-commercial property.  Home improvement shall also include insulation installation, and the conversion of existing commercial structures in connection therewith."  *Id.*

The Home Improvement Practices ("HIP") regulations, which were adopted to implement the statutory provisions set forth in the CFA and Contractor's Registration Act (*Murnane*, 420 N.J. Super. at 334; N.J.A.C. 13:45A-16.1(a)) and which are broadly construed and applied (*Cox v. Sears roebuck & Co.*, 138 N.J. 2, 19-20 (1994)), expand upon the definition of "home improvement" set forth in the Contractor's Registration Act to further specify that:

> "Home improvement" means the remodeling, altering, painting, repairing, renovating, restoring, moving, demolishing, or modernizing of residential or noncommercial property or the making of additions thereto, and includes, but is not limited to, the construction, installation, replacement, improvement, or repair of driveways, bathrooms, garages, basements and basement waterproofing, fire protection devices, security protection devices, central heating and air conditioning equipment, water softeners, heaters, and purifiers, solar heating or water systems, insulation installation, siding, wall-to-wall carpeting or attached or inlaid floor coverings, and other changes, repairs, or improvements made in or on, attached to or forming a part of the residential or noncommercial property, but does not include the construction of a new residence.  The term extends to the conversion of existing commercial structures into residential or noncommercial property and includes any of the above activities performed under emergency conditions.

18

N.J.A.C. 13:45A-16.1A; *see also* N.J.A.C. 13:45A-17.2..  Similarly, the HIP regulations also provide additional detail with respect to the requirements of home improvement contracts. Indeed, the HIP regulations specify that:

> All home improvement contracts for a purchase price in excess of $500.00 and all changes in the terms and conditions thereof shall be in writing.  Home improvement contracts which are required by this subsection to be in writing, and all changes in the terms and conditions thereof, shall be signed by all parties thereto, and shall clearly and accurately set forth in legible form and in understandable language all terms and conditions of the contract, including, but not limited to, the following . . .
>
> > iii.  The total price or other consideration to be paid by the buyer, including all finance charges.  If the contract is one for time and materials, the hourly rate for labor and all other terms and conditions of the contract affecting price shall be clearly stated[.]

N.J.A.C. 13:45A-16.2(a)(12).  These requirements apply equally to "sellers" under the HIP regulations and "home improvement contractors" under the Home Improvement Contractor Registration regulations, both of which essentially share the aforementioned definition of "contractors" under the  Contractor's Registration Act.  N.J.A.C. 13:45A-16.1(b); *see* N.J.A.C. 13:45A-16.1A (defining the term "seller"); N.J.A.C. 13:45A-17.2 (defining the term "home improvement contractor").

In light of the sweeping definition of "home improvement" set forth in the HIP regulations outlined above, nothing in the allegations making up Haven's proposed unjust enrichment claim permits the Court to reasonably infer that the time and labor and costs incurred by Haven in cleaning up and storing Plaintiffs' property fall outside of the ambit of same. Further, no where in Haven's proposed Third Party Complaint and Counterclaim does Haven

include any allegations to suggest that the costs incurred by Haven amounted to less than $500 or that Haven and Plaintiffs entered into a written contract for the work performed. The failure to include any such allegations makes it impossible for the Court to reasonably infer anything but that Haven committed an unlawful practice under the HIP regulations (*see* 13:45A-16.2(a)(12)) and Contractor's Registration Act (*see* N.J.S.A. 56:8-151). As a result, the Court necessarily also finds that Haven's conduct violated the CFA. N.J.S.A. 56:8-146(a); *see Murnane*, 420 N.J. Super. at 337. As stated above, a violation of the CFA precludes any recovery by Haven, even where said recovery is sought under a theory of unjust enrichment/*quantum meruit*. Therefore, the Court finds that Haven's proposed unjust enrichment claims would be futile.[6]

### 2. Plaintiffs' Motion to Amend Their Complaint to add the Legal Theory of *Res Ipsa Loquitur*

Plaintiffs seek permission to amend their Complaint in order to add the legal theory of *res ipsa loquitur* to their previously asserted negligence claim. Under New Jersey law, *res ipsa loquitur* is "an evidentiary rule that governs the adequacy of evidence in some negligence cases"; it "is not a theory of liability." *Myrlak v. Port Auth. of N.Y. and N.J.*, 157 N.J. 84, 95 (1999), *certif. denied*, 167 N.J. 89 (2001). Because *res ipsa loquitur* is a rule of evidence and not a theory of liability, it need not be pleaded in a plaintiff's complaint. Indeed, regardless of whether the doctrine is referenced in a plaintiff's complaint, a plaintiff may attempt to rely on *res ipsa loquitur* to prove a negligence claim. *See Forsch v. Liebhardt*, 5 N.J. Super. 75, 79 (App. Div.

---

[6]In reaching this decision, the Court notes that in opposing Haven's motion to add a claim for unjust enrichment, Plaintiffs raised the CFA, Contractor's Registration Act and HIP regulations as a basis for denying Haven's proposed unjust enrichment claim as futile. In its reply, Haven never addressed same. The Court assumes that if Haven had a viable argument against the application of these statutory and regulatory provisions, it would have raised it.

1949) (holding that plaintiffs could rely on doctrine of *res ipsa loquitur* even where operative complaint charged defendants with specific acts of negligence and plaintiffs attempted to support charge of negligence with proofs); *see also Fassbinder v. Pa. R.R. Co.*, 322 F.2d 859, 863 (3d Cir. 1963) (finding that *res ipsa loquitur* need not be pleaded in complaint or otherwise noticed to adversary because it is neither cause of action nor ground for recovery, nor issue).   The Court further finds that while a plaintiff need not include *res ipsa loquitur* in his complaint, nothing in the Court's liberal pleading standards actually prevents him from doing so.  *See Robbins v. Greyhound Lines, Inc.*, Civil Action No. 08-2724, 2008 WL 4522485, *2 (E.D.Pa. Oct. 7, 2008) (citing *Banks v. Ashland Oil Co.*, 127 F.Supp.2d 679, 682 (E.D.Pa. 2001)).

   In light of the foregoing, the Court finds that Plaintiffs' motion to amend to include a reference to *res ipsa loquitur* as well as Haven's opposition thereto are largely unnecessary. Regardless of whether the amendment is permitted, Plaintiffs can pursue application of the doctrine and its attendant permissive inference of negligence at a later date; for example, in the context of motions for summary judgment or at trial.  Similarly, regardless of whether Plaintiffs are permitted to amend their Complaint to reference the theory, at the time Plaintiffs in fact seek to obtain the benefit of the theory, Haven will be able to argue that Plaintiffs are not entitled to an inference of negligence because they have not established the following elements of *res ipsa loquitur*: "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect."  *Iwanicki v. Bay State Milling Co.*, Civil Action No. 11-1792 (CCC) 2011 WL 6131956, *14 (D.N.J. Dec. 7, 2011).  In this respect, Haven's opposition to Plaintiffs' request to include a reference to *res ipsa loquitur*

misses the mark because Haven focuses on whether Plaintiffs are at this time substantively able to prove that they are entitled to the permissive negligence inference that arises when the aforementioned elements of *res ipsa loquitur* are met.  That, however, is a fact question for a later date.

Here, while the Court believes that Plaintiff's proposed *res ipsa loquitur* amendment is unnecessary, the Court finds no reason under Its liberal pleading as well as amendment standards to deny same.  The proposed amendment will not prejudice Haven because, as explained above, Haven will still be able to argue that Plaintiffs are not entitled to the benefit of the theory.  Further, even if not explicitly referenced in Plaintiffs' Complaint, Plaintiffs would be entitled to raise the evidentiary doctrine of *res ipsa loquitur* in litigating this matter.  Whether Plaintiffs will, in fact, be entitled to rely on the doctrine and benefit from its attendant inference of negligence is an entirely separate question that is not ripe for consideration in the context of Plaintiffs' motion to amend.  Instead that decision will depend on the proofs Plaintiffs are able to put forward at the time they actually attempt to substantively rely on the doctrine, *i.e.,* at summary judgment or trial.  As a result, the Court shall permit Plaintiffs to amend their Complaint to reference the doctrine of *res ipsa loquitur*.[7]

The Court, however, again notes that by permitting Plaintiffs to include such a reference, the Court is in no way finding that Plaintiffs are entitled to the inference of negligence that attaches when a plaintiff establishes that "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is

---

[7]In addition, the Court notes that It would be hard-pressed to find that Plaintiffs' proposed amendment is futile because the doctrine of *res ipsa loquitur* is not a theory of liability and as such is not subject to dismissal under Rule 12(b)(6).

no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect." *Iwanicki*, 2011 WL 6131956, at *14. Plaintiffs, here, have made no such showing, nor did they have to to succeed on their motion to amend and gain permission to add a reference to *res ipsa loquitur* in their Complaint. Instead, as the Court has previously pointed out, whether Plaintiffs can, in fact, prove the elements of *res ipsa loquitur* is a substantive, fact-based issue for another day.

### III.    Conclusion

For the reasons set forth above, Haven's motion to file a Third Party Complaint and counterclaims is GRANTED in part and DENIED in part. Haven's motion is granted to the extent Haven seeks to file a Third Party Complaint against SB SSP and Rosenthal and a counterclaim against Christian Napolitano and SB LLC for contribution and common law indemnification. Haven's motion, however, is denied to the extent Haven seeks to file a Third Party Complaint against SB SSP and Rosenthal and a counterclaim against Christian Napolitano and SB LLC for contractual indemnification. It is also denied to the extent Haven seeks to assert any claims for unjust enrichment. Plaintiffs' motion to file an Amended Complaint is GRANTED in all respects. An appropriate Order follows.[8]

Dated: January 26, 2012

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

---

[8]In light of the fact that Plaintiffs have been given permission to correct the name of the Limited Liability Company in their Amended Complaint from SB LLC to SB SSP, Haven, in responding to same may convert its proposed third party claims against SB SSP to counterclaims.